FILED

02/28/2022

Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs February 1, 2022

## NATHAN SCARBOROUGH v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
No. 16-02148      John Wheeler Campbell, Judge
_____

**No. W2021-00402-CCA-R3-PC**
_____

The Petitioner, Nathan Scarborough, pleaded guilty to aggravated child abuse of a child eight years of age or less and second degree murder, and he received an effective thirty-three-year sentence.  The Petitioner filed a petition for post-conviction relief, contending that he received ineffective assistance of counsel and that he did not plead guilty knowingly and voluntarily.  Following a hearing, the post-conviction court denied the petition, and the Petitioner appeals.  After review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, P.J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and JILL BARTEE AYERS, JJ., joined.

J. Jeffrey Lee, Memphis, Tennessee, for the appellant, Nathan Scarborough.

Herbert H. Slatery III, Attorney General and Reporter; Samantha L. Simpson, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Steve Ragland, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## FACTUAL AND PROCEDURAL HISTORY

In April 2016, the Petitioner was indicted for aggravated child abuse of a child eight years of age or less in count one, first degree felony murder in count two, aggravated child neglect of a child eight years of age or less in count three, first degree felony murder in count four, and aggravated child endangerment of a child eight years of

age or less in count five. We note that there is no plea agreement in the appellate record. However, the post-conviction relief hearing testimony and plea colloquy transcript entered as an exhibit at the hearing reflect that the Petitioner, pursuant to a plea agreement, pleaded guilty to aggravated child abuse of a child eight years of age or less in count one and second degree murder in count two, and he received two concurrent thirty-three-year sentences to be served as a Range II offender at 100%. Pursuant to the agreement, the other charges were dismissed. At the plea colloquy hearing, the Petitioner stipulated to the following factual basis presented by the State:

> Had these matters proceeded to trial, the State's proof would have been that on or about September 22nd of 2015 here in Shelby County, officers with Memphis Police Department were called to the scene at a hospital where they had a child [("the victim")], a four-month old . . . , who was in full cardiac arrest when she arrived. Her mother was with her.

> The paramedics reported the last one to be with the child was her father, [the Petitioner]. And the last time he had seen her breathing was at four o'clock that afternoon. When he went to pick up the child, saw she wasn't breathing, he took the child to her mother, Ms. Lana Applegarth Nelson who was in the bathroom. Grandparents came downstairs. They attempted CPR. Mother called 911 and the child was pronounced at Baptist ER.

> Memphis Police Department investigated, interviewed . . . [the Petitioner] [and] . . . he admitted to beating [the victim] when she wouldn't stop crying. He admitted to not trying to give her any aid, nor did he call 911 or tell the other people in the house that anything had happened. He admitted to placing her in bed and waiting until her mother got home to pick her up. At that point he called for help.

> According to the medical examiner, [the victim] died of blunt force injury to the head. She had multiple contusions, scalp and subgaleal hemorrhage, two calvarial skull fractures, and an epidural hemorrhage. This did occur here in Shelby County.

At the plea colloquy hearing, the Petitioner testified in response to the trial court's questioning that he understood his charges, that trial counsel explained to him what the State would have had to prove to convict him of those charges, and that trial counsel discussed the facts of his case as they related to the charges. He agreed that he understood that had he proceeded to trial and been convicted, he would have faced a minimum sentence of life imprisonment for first degree felony murder and fifteen to

twenty-five years for aggravated child abuse of a child eight years of age or less and that the court could have ordered the sentences to be served consecutively. Regarding the terms of the plea agreement, the Petitioner responded affirmatively that he understood he was pleading guilty to aggravated child abuse of a child eight years of age or less in count one and second degree murder as a lesser offense of first degree felony murder in count two. He understood that both convictions were Class A felonies in which he faced a range of sentences from fifteen to sixty years. He also understood that he was agreeing to serve two concurrent thirty-three-year sentences as a Range II offender, even though he would ordinarily be classified as a Range I offender for sentencing purposes. Specifically, the Petitioner agreed that he understood he was pleading outside of his individual sentencing range, that trial counsel had explained what it meant to plead outside of his sentencing range, and that he wanted to plead out of range. He understood that he would not be eligible for parole and that he would be a convicted felon as a result of the pleas. He also agreed that he understood that the remaining counts of the indictment were being dismissed pursuant to the plea agreement. He testified that he was pleading guilty freely and voluntarily.

Regarding trial counsel's representation, the Petitioner responded affirmatively that he and trial counsel discussed the facts of his case and any possible defenses he may have had, and that based on those discussions, the Petitioner decided to plead guilty. The Petitioner indicated that trial counsel answered all of his questions and did everything the Petitioner asked trial counsel to do. In response to trial counsel's questions at the hearing, the Petitioner testified that he did not have any questions for trial counsel. When trial counsel asked, "Is this what you want to do?", the Petitioner responded, "No, sir." However, the Petitioner subsequently testified, "Yes," to the same question and indicated that nobody forced him to make the decision and that it was the Petitioner's decision to plead guilty. He testified that he understood that he could go to trial if he wanted. He agreed that he had discussed his decision with his mother and father and that trial counsel had discussed the case with them with his consent. The trial court accepted the Petitioner's pleas.

The Petitioner timely filed a petition for post-conviction relief. Following the appointment of counsel, the Petitioner filed an amended brief raising among other arguments not presented on appeal that trial counsel's ineffectiveness rendered his pleas unknowing and involuntary because trial counsel failed to review discovery with him and failed to explain the terms of the plea agreement. The State responded that the Petitioner received the effective assistance of counsel and pleaded guilty knowingly and voluntarily.

The Petitioner and trial counsel testified at the post-conviction relief hearing. The Petitioner testified that trial counsel only provided him with part of discovery and that trial counsel withheld a CD containing the other part. He stated that trial counsel

informed him about the CD, but he was not permitted to have it in his possession in jail. According to the Petitioner, trial counsel failed to provide the CD to the Petitioner's father as promised, and the Petitioner never learned what contents were stored on the CD. However, he stated that he knew he was not provided all of the discovery because trial counsel did not want the Petitioner to see the autopsy photographs. He stated that he was not informed about all of the evidence in his case as a result. He explained that he did not inform the trial court about not being provided discovery because he was not thinking, was in a hurry, and was nervous. On cross-examination, the Petitioner agreed he received in the discovery a statement he made to the Memphis Police Department describing his killing of the victim in detail. He agreed that the description of the killing he provided to police was an accurate representation of what happened on the day of the incident. He stated that he was evaluated for his mental health during the course of the proceedings but that he believed that his failure to take prescribed medication skewed the results of the evaluations.

The Petitioner testified that trial counsel discussed the plea agreement with him twice, once before the day he entered the pleas and once on the day of the pleas, moments before he and trial counsel entered the courtroom. He stated that trial counsel discussed the plea agreement with his mother prior to his entering the pleas and that his mother's approval of the plea agreement "made [him] think it was . . . the best thing [he] could have." On cross-examination, the Petitioner agreed that he sought a plea agreement involving an effective twenty-five-year sentence but that the State rejected it. He agreed that he knew that his case was set for trial on January 14, 2019, on the indicted offenses. However, once the State presented the offer for thirty-three years, he agreed to accept it. On redirect-examination, he testified that he was confused about how the plea agreement increased from twenty-five years to thirty-three years, but he understood that it had changed by the time he was in front of the trial court to enter the pleas.

Regarding the details of the plea agreement, the Petitioner testified that trial counsel discussed with him the elements of the aggravated child abuse of a child eight years of age or less charge but that he did not understand them. He stated that trial counsel did not discuss the elements of second degree murder. He explained that trial counsel informed him that he would be pleading to an out-of-range sentence but that he did not know what that meant. The Petitioner understood that if he had gone to trial and lost, he could have received a greater sentence. He did not understand why he was receiving so much time, and he felt like he "was being railroaded [or] . . . wrongly convicted for something that was a pure accident." He understood that he could have proceeded to trial but stated, "I was afraid of going to trial because [trial counsel] said that I would do much worse." He felt like trial counsel talked him out of going to trial. He testified that his pleas were not knowing at the time and that his prior testimony that he understood the plea agreement was inaccurate.

- 4 -

The Petitioner recalled the trial court's reviewing the terms of the plea agreement with him. Specifically, on cross-examination, the Petitioner recalled that the trial court explained his rights to him, including the right to proceed to trial and appeal the outcome of the trial, as well as that he was waiving those rights by pleading guilty. He agreed that the trial court also explained the penalties underlying the offenses and that he was agreeing to a sentence outside of his sentencing range as part of the agreement. The Petitioner recalled informing the trial court that he understood the terms of the agreement, but he stated that he did not actually understand it because he was on medication for mental health issues, "wasn't in the right mind," and was nervous. He testified that he was still taking the medication at the time of the post-conviction relief hearing. He stated that he realized that he did not understand the terms of the plea agreement a few months after the plea colloquy. When asked what caused his understanding to change, he stated, "I had some help battling through this pain. I was afraid that . . . I didn't get the right amount of time." He stated that he did not understand why he received such a lengthy sentence as a Range II offender when he did not have a criminal history. He stated that he went along with the process and did not tell the trial court he did not understand because he was nervous, was not knowledgeable about the law, and had never been previously charged with a crime.

On cross-examination, the Petitioner agreed that he told the trial court that trial counsel reviewed the elements of the offenses and possible defenses. He also agreed that he never told the trial court that he was nervous, hurried, or confused. When asked if he would have taken the plea agreement if he had understood the terms of his sentence, the Petitioner responded, "Maybe if I knew all the details, but . . . I probably would've tried to get it lower if I knew . . . the whole procedure, . . . if I was able to go to trial, but I was afraid to." He agreed that he wanted to avoid the life sentence that would have resulted from being convicted of the first degree felony murder charge and that it was his own decision to plead guilty.

Trial counsel testified that he was retained by the Petitioner's family to represent the Petitioner on the charges underlying this case. He stated that he obtained discovery from the State and reviewed it with the Petitioner. Specifically, he provided the Petitioner with written discovery and discussed it with him on "a couple of occasions." Trial counsel explained that he warns his clients about the danger of keeping discovery in their possession while incarcerated due to the possibility of other inmates obtaining it and trying to use it against his clients. He stated that he advised the Petitioner that he had to be careful about any discovery he kept in his possession and that he should safeguard it to keep it private. He recalled that there was a CD included in the discovery he obtained from the State that he believed contained autopsy photographs, but he could not recall if the Petitioner obtained possession of it because of the jail's rules about possessing CDs.

However, trial counsel stated he discussed the contents of the CD with the Petitioner, as well as trial counsel's interview with the medical examiner. Trial counsel testified that the Petitioner was able to review the medical examiner's report.

Trial counsel stated that he met with the Petitioner on several occasions to discuss the case and that they had a good working relationship with one another during the representation. He was able to have the Petitioner evaluated by two forensic doctors, but the defense did not receive beneficial opinions from them and did not obtain formal written reports for that reason. However, he used any beneficial information obtained from the evaluations in negotiating with the State. After reviewing the case with the Petitioner, including the discovery, the elements of the offenses, the evidence against him, options going forward, and related costs and benefits, the Petitioner agreed to present a plea offer to the State. Trial counsel explained that the offer the Petitioner agreed to present to the State was to serve twenty-five years, and that such offers were commonplace in Shelby County to show a good-faith intent to negotiate. He stated that the State countered with a sentence "in the 40's or 35 or somewhere." At some point, the prosecutor mentioned the possibility of seeking the death penalty, but no such notice was ever filed. The State and defense eventually agreed that the Petitioner would plead guilty to aggravated child abuse of a child eight years of age or less and second degree murder. The agreement involved a thirty-three-year sentence because the victim's mother and the State were adamant that any jail credits earned should be added to the length of the sentence. As a result, they "probably settled around 30 [years], but then it became 33 to factor in that credit . . . to appease both the State and . . . the victim's mother." Trial counsel recalled that the Petitioner and the Petitioner's family thought the agreement was fair. He explained that although the Petitioner pleaded to an out-of-range sentence, the total sentence was less than the possible sentence if he was convicted at trial on the charged offenses. Trial counsel denied that the Petitioner was rushed or pressured into accepting the plea agreement.

Trial counsel stated that the evidence against the Petitioner influenced his representation. He stated that he attempted to exclude the Petitioner's statement to the police, but that the Petitioner, against trial counsel's advice to not talk about the case, made several other statements while incarcerated. Trial counsel described the Petitioner as a "prolific writer," in that he wrote to the victim's mother and a nurse on several occasions discussing the case.

The post-conviction court made a general credibility finding in favor of trial counsel and against the Petitioner. The court found that the Petitioner provided no evidence to support his allegations. The court found that trial counsel's representation was not deficient in reviewing the discovery with the Petitioner because he met with the Petitioner on a number of occasions, during which they discussed discovery. Regarding

trial counsel's discussion of the plea agreement with the Petitioner, the court found that trial counsel's performance was not deficient because he discussed with the Petitioner the law governing the Petitioner's case. Additionally, the court credited the Petitioner's plea colloquy testimony, in which he testified that trial counsel discussed the case with him, answered his questions, and did what the Petitioner asked him to do. The court found that the result of the Petitioner's negotiations with the State was a sentence lower than he would have received had he lost at trial and that several of his charges were dismissed. The court found that the Petitioner's testimony indicated he did not want to go to trial but instead wanted to renegotiate his plea agreement.

The post-conviction court also found that the Petitioner's plea was knowing and voluntary because the trial court explained the plea agreement to the Petitioner and the Petitioner responded unequivocally that he understood the court's explanation. The court declined to credit the Petitioner's testimony that his medication for mental health issues made him unable to understand what was happening at the plea colloquy, noting that the Petitioner admitted to being on medication at the post-conviction relief hearing but exhibited no signs of confusion. The court denied the petition, and the Petitioner appeals.

**ANALYSIS**

The Petitioner contends that the post-conviction court erred in denying his petition because he received the ineffective assistance of counsel and his guilty pleas were not entered knowingly and voluntarily. A petitioner may request post-conviction relief by asserting that his conviction or sentence is void or voidable because of the abridgment of his constitutional rights provided by the Tennessee or the United States Constitutions. T.C.A. § 40-30-103. To obtain post-conviction relief, a petitioner must prove the allegations of fact made in the petition by clear and convincing evidence. T.C.A. § 40-30-110(f). On appeal, the post-conviction court's findings of fact are conclusive unless the evidence preponderates against them. *Ward v. State*, 315 S.W.3d 461, 465 (Tenn. 2010). "[Q]uestions concerning the credibility of witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the trial judge." *Fields v. State*, 40 S.W.3d 450, 456 (Tenn. 2001) (citing *Henley v. State*, 960 S.W.2d 572, 579 (Tenn. 1997)). Additionally, appellate courts may not "substitute their own inferences for those drawn by the trial court." *Id.* (citing *Henley*, 960 S.W.2d at 579). This court reviews "a post-conviction court's conclusions of law, decisions involving mixed questions of law and fact, and its application of law to its factual findings de novo without a presumption of correctness." *Whitehead v. State*, 402 S.W.3d 615, 621 (Tenn. 2013) (citations omitted).

# I. Ineffective Assistance of Counsel

The Petitioner alleges that he received ineffective assistance of counsel. A criminal defendant has a right to the assistance of counsel under the Sixth Amendment to the United States Constitution and article I, section 9 of the Tennessee Constitution. *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). The right to assistance of counsel inherently guarantees that counsel's assistance is "effective." *Strickland v. Washington*, 466 U.S. 668, 685-86 (1984); *Dellinger v. State*, 279 S.W.3d 282, 293-94 (Tenn. 2009). To prove that counsel was ineffective, a petitioner must show that (1) counsel performed deficiently and (2) such deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687-88.

To establish deficient performance, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. This standard requires a petitioner to demonstrate that the "services rendered or the advice given" were "'below the range of competence demanded of attorneys in criminal cases.'" *Grindstaff v. State*, 297 S.W.3d 208, 216 (Tenn. 2009) (quoting *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975)). Counsel must have made errors so serious that counsel was not functioning as the "'counsel'" guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687. Measuring counsel's performance requires giving deference to counsel's decisions, and courts must apply a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 669. Accordingly, this court has held that a "petitioner is not entitled to the benefit of hindsight, may not second-guess a reasonably based trial strategy by his counsel, and cannot criticize a sound, but unsuccessful, tactical decision made during the course of the proceedings." *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). The reviewing court "must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's conduct, and to evaluate the conduct from the perspective of counsel at that time." *Howell v. State*, 185 S.W.3d 319, 326 (Tenn. 2006) (citing *Strickland* 466 U.S. at 689). We also apply the *Strickland* standard for determining deficiency when reviewing "challenges to guilty pleas based on ineffective assistance of counsel." *See Hill v. Lockhart*, 474 U.S. 52, 58 (1985).

To demonstrate that counsel's deficient performance prejudiced the defense in the context of a guilty plea, a petitioner must prove that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Because a petitioner must establish both deficiency and prejudice to prove ineffective assistance of counsel, a court need not address both prongs where the petitioner has failed

to establish one of them. *See Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996) (citing *Strickland*, 466 U.S. at 697).

On appeal, the Petitioner contends that trial counsel's failure to review discovery with him and failure to explain the terms of the plea agreement rendered his pleas unknowing and involuntary. The State responds that the post-conviction court properly denied relief. We agree with the State.

The Petitioner failed to establish that trial counsel was deficient because he did not show that trial counsel's discussion of the discovery with him fell below the range of competence demanded of attorneys in criminal cases. Trial counsel testified that he provided written discovery to the Petitioner and met with him to discuss discovery on "a couple of occasions." Although trial counsel recalled that discovery included a CD containing autopsy photographs which the Petitioner was not allowed to possess in jail, he testified that he discussed the contents of the CD with the Petitioner and that the Petitioner was able to review the medical examiner's report. The Petitioner testified that trial counsel withheld the contents of the CD from him as well as the autopsy photographs and that he never obtained the information on the CD. However, the post-conviction court credited trial counsel's testimony, and we do not reweigh that credibility determination on appeal. *See Fields*, 40 S.W.3d at 456. Therefore, the Petitioner failed to show trial counsel was deficient in regard to discovery. Additionally, we conclude that the Petitioner failed to show a reasonable probability that being informed of any discovery trial counsel failed to provide him would have changed his decision to plead guilty. Thus, he failed to demonstrate prejudice as well.

The Petitioner has similarly failed to show that trial counsel was ineffective in his explanation of the plea agreement. Trial counsel testified that he met with the Petitioner to discuss the case and that after advising him of the discovery, the elements of the offenses, the evidence against him, and the options available to him as well as the costs and benefits, the Petitioner agreed to present a plea offer to the State. The first offer to serve twenty-five years was rejected by the State, but after negotiations, the Petitioner agreed to plead guilty to aggravated child abuse of a child eight years of age or less and to second degree murder for a sentence of thirty-three years. Trial counsel advised the Petitioner that he was pleading out of range but that the thirty-three-year sentence was less than his total sentencing exposure if he had proceeded to trial and lost. The Petitioner and the Petitioner's family thought the deal was fair. The Petitioner's hearing testimony was generally consistent with trial counsel's testimony regarding the explanation of the plea agreement, except that the Petitioner testified that trial counsel did not explain the elements of second degree murder. Although the Petitioner testified that he, nonetheless, did not understand the terms of the agreement trial counsel explained to him, the post-conviction court credited trial counsel's testimony over the Petitioner's

testimony. *See Fields*, 40 S.W.3d at 456. Therefore, we conclude that the Petitioner failed to show that trial counsel's representation was deficient.

We also note that the Petitioner equivocated when testifying if he would have accepted the plea agreement had he been fully informed. Specifically, the Petitioner testified, "Maybe if I knew all the details, but . . . I probably would've tried to get it lower if I knew . . . the whole procedure, . . . if I was able to go to trial, but I was afraid to." The post-conviction court declined to credit the Petitioner's testimony, finding instead that his motivation in seeking post-conviction relief was to renegotiate the terms of his plea agreement but not to proceed to trial. The evidence does not preponderate against the post-conviction court's findings. The Petitioner, by his own admission, accepted the plea agreement to avoid the minimum life sentence associated with being convicted of first degree felony murder. Additionally, the evidence against the Petitioner was particularly strong in that he provided a detailed statement of his killing of the victim, which he confirmed as accurate at the post-conviction hearing. Therefore, the Petitioner failed to show prejudice. *Hill*, 474 U.S. at 59 (requiring that the Petitioner show a reasonable probability that he "would have insisted on going to trial"). The Petitioner is not entitled to relief.

We note that the argument section of the Petitioner's brief consists almost entirely of citation to law and block quotations citing his testimony from the post-conviction hearing, but it generally lacked argument concerning trial counsel's performance. For example, he cites to his own testimony regarding his mental health and medication but makes no argument that trial counsel was ineffective in failing to address his mental health issues. To the extent that he attempted to raise any additional arguments related to ineffective assistance of counsel, we conclude that such arguments are waived. Tenn. Ct. Crim. App. R. 10(b) ("Issues which are not supported by argument, citation to the authorities, or appropriate references to the record will be treated as waived in this court.").

## II. Knowing and Voluntary Nature of the Petitioner's Guilty Pleas

The Petitioner also claims that his pleas were not entered knowingly and voluntarily. Due process requires that a criminal defendant's guilty plea be "knowing and voluntary." *Johnson v. State*, 834 S.W.2d 922, 923 (Tenn. 1992) (citing *Boykin v. Alabama*, 395 U.S. 238, 243 (1969)). A guilty plea comports with due process where it "represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Jaco v. State*, 120 S.W.3d 828, 831 (Tenn. 2003) (citing *North Carolina v. Alford*, 400 U.S. 25, 31 (1970). In making this assessment, courts must consider circumstantial factors, including:

the relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.

*Blankenship v. State*, 858 S.W.2d 897 (Tenn. 1993). A reviewing court must consider the totality of the circumstances surrounding a petitioner's plea of guilty. *State v. Turner*, 919 S.W.2d 346 (Tenn. Crim. App. 1995).

The Petitioner argues that he did not knowingly and voluntarily enter his pleas because he did not understand the charges against him, the legal process, or the terms of the plea agreement, and because he did not have a chance to review all of the discovery. He also argues that his pleas were not knowingly and voluntarily entered because he was on medication for mental health issues at the time he entered the pleas and because he relied on his mother's understanding of the case, which was influenced by trial counsel's discussions with her. The State responds that the Petitioner failed to show his pleas were unknowing or involuntary. We agree with the State.

The Petitioner testified that he did not have a criminal history, and the parties do not dispute that he would have been classified as a Range I offender in at least some of the charged offenses had he been convicted at trial instead of accepting the plea agreement. However, trial counsel's testimony reflects that he reviewed discovery with the Petitioner, the elements of the offenses, the evidence against him, options available to him and related costs and benefits, and that the Petitioner agreed to negotiate with the State for a plea agreement. The post-conviction court credited trial counsel's post-conviction relief hearing testimony. The post-conviction court credited the Petitioner's plea colloquy testimony, in which he testified that trial counsel discussed the case with him, answered his questions, and did what the Petitioner asked him to do. The court also observed that after discussing the plea agreement with the Petitioner at the colloquy, the Petitioner informed the court that he understood the plea agreement and wanted to plead guilty. "A petitioner's testimony at a guilty plea hearing 'constitutes a formidable barrier' in any subsequent collateral proceeding because 'solemn declarations in open court carry a strong presumption of verity.'" *Bruce S. Rishton v. State*, No. E2010-02050-CCA-R3-PC, 2012 WL 1825704, at *17 (Tenn. Crim. App. May 21, 2012) (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)).

As we discussed above, trial counsel did not provide deficient representation. The post-conviction court found that trial counsel met with the Petitioner to discuss discovery

and explained the plea agreement to him. Additionally, the Petitioner admitted at the evidentiary hearing that he was motivated to avoid the greater sentence of life imprisonment that could have resulted from a trial, and the post-conviction court found that his motivation for filing the post-conviction petition was to renegotiate the plea agreement rather than proceed to trial. Trial counsel testified that he had the Petitioner evaluated by two forensic doctors but that the defense did not receive favorable opinions from them. The Petitioner presented no evidence regarding his mental health other than his own testimony about his mental health condition, the medication he claims to have been on at the time of the plea colloquy, or the effect such medication would have had on his understanding of the proceedings. The post-conviction court declined to credit his post-conviction relief hearing testimony, and it found that the Petitioner testified at the hearing that he was still on medication but did not exhibit any signs of confusion. The Petitioner also testified that he was influenced by his mother's understanding and approval of the plea agreement, but the post-conviction court did not credit the Petitioner's testimony. Additionally, the evidence against the Petitioner was particularly strong in that he provided a statement to law enforcement detailing his killing of the victim, and he agreed at the post-conviction relief hearing that the statement was an accurate description of the killing. We conclude that the Petitioner's pleas were knowing and voluntary under the totality of the circumstances. Therefore, he is not entitled to relief.

## CONCLUSION

Based on the foregoing reasons, we affirm the judgment of the post-conviction court.

_____
JOHN EVERETT WILLIAMS, PRESIDING JUDGE